IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CARLTON HALL**, | Case No. 3:14-cv-00277-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security | |
| Defendant. | |

George J. Wall, 1336 E. Burnside Street, Suite 130, Portland, OR 97214. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Lisa Goldoftas, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Carlton Hall ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act. For the reasons discussed below, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings consistent with this opinion.

PAGE 1 – OPINION AND ORDER

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on December 22, 1971. AR 21, 638. Plaintiff protectively filed an application for SSI benefits on July 30, 2010, and for DIB on August 3, 2010. AR 12, 207, 211. In each, Plaintiff alleged a disability onset date of July 15, 2007. AR 12, 207, 211. Plaintiff

was 35 years old as of the alleged disability onset date. Both of Plaintiff's claims were denied

initially on November 16, 2010, and upon reconsideration on March 21, 2011. AR 12. Plaintiff

requested a hearing before an ALJ, at which Plaintiff testified on December 8, 2011. *Id*. The ALJ

affirmed the Commissioner's decision, finding Plaintiff not disabled and thus not entitled to SSI

or DIB. AR 23. The Appeals Council denied Plaintiff's request for review on January 15, 2014,

making final the ALJ's decision. AR 1. Plaintiff now appeals to this Court.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
      impairment or combination of impairments is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.
      20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
      this impairment must have lasted or be expected to last for a continuous

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

After noting that Plaintiff met the insured status requirements of the Social Security Act, AR 14, the ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the alleged onset date of July 15, 2007. AR 15. At step two, the ALJ found Plaintiff to have several severe impairments that "cause significant limitations in the claimant's ability to perform basic work activities." *Id*. These impairments included a separated shoulder, generalized anxiety disorder, social phobia, major depression, ADHD, nicotine dependence, cannabis abuse, and alcohol dependence. *Id*.

At step three, the ALJ concluded that Plaintiff's impairments meet the severity requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter "Appendix 1") because they cause significant limitations in Plaintiff's activities of daily living and concentration, persistence, and pace. AR 16. The ALJ found, however, that Plaintiff's substance use contributed to these impairments. *Id*. Although the ALJ believed that Plaintiff would still have severe impairments if Plaintiff stopped his substance use, the ALJ found that without substance use, Plaintiff's impairments would not meet the listing requirements of Appendix 1. *Id*.

To determine whether Plaintiff's substance use materially contributed to his disability, the ALJ evaluated the time period beginning June 27, 2011, the date when Plaintiff stopped

substance use, through the date of the ALJ's decision.[1] *Id*. The ALJ gave great weight to the testimony of medical expert Dr. John Bellville. AR 17. Dr. Bellville indicated that Plaintiff does not have marked limitations in the absence of substance use, an opinion that the ALJ found consistent with Plaintiff's decrease in mental health treatment after June 27, 2011. *Id*. The ALJ noted that despite Plaintiff's social anxiety and mild restrictions in activities of daily living, Plaintiff's social functioning included the ability to go about in the community, socialize with others, do laundry, and care for an infant niece. AR 16. The ALJ also noted that despite moderate difficulties with concentration, persistence, and pace, Plaintiff can read and understand newspaper articles, follow directions, and execute good insight and judgment. AR 17.

The ALJ also considered the opinion of Disability Determination Services evaluator Marsha McFarland, Ph.D., whose opinion he gave great weight regarding her finding that Plaintiff's mental deficits without substance use are limited. *Id*. The ALJ gave little weight to Dr. McFarland's opinion that Plaintiff's impairments with substance use are not at a marked level because it is inconsistent with other medical experts' opinions and with Plaintiff's alcohol-related hospitalizations. *Id*.

The ALJ gave little weight to counselor Vera Parker's opinion because she is not an acceptable medical source, provided sparse treatment notes, and relied heavily on Plaintiff's subjective reporting of symptoms and limitations. *Id*. Her opinion also conflicted with Plaintiff's activities, including his caring for an infant niece and lack of episodes of decompensation. *Id*. For similar reasons, the ALJ questioned the reliability of Plaintiff's subjective complaints. *Id*.

---

[1] The ALJ concluded that Plaintiff's shoulder separation did not meet the listing requirement of 1.02 because it did not involve a major peripheral joint in each upper extremity. AR 16. The ALJ later identified existing work that Plaintiff could perform despite his physical impairment. AR 22. Because Plaintiff does not appeal this portion of the ALJ's decision, the Court does not address Plaintiff's physical impairment.

The ALJ next assessed Plaintiff's RFC. The ALJ found that if Plaintiff stopped the substance abuse:

> [Plaintiff] would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: light exertional ability to include the abilities to walk, stand and sit as described with the light exertional category without any limitations in walk, stand, sit, and lift; overhead lifting would be limited for the left upper extremity to light objects on an occasional basis; there would be no repetitious use of the left upper extremity for either gross or fine activities, and for fine activities to frequent use at the same lifting limitations as previously stated; there are no limitations for the right upper extremity; [activities of daily living] would be mildly limited; the individual could have only brief superficial contact with the public, work with only a few (less than 6) co-workers and in a place where there are preferably few turnovers in staff, and not be in a position which requires constant, critical over-the-shoulder supervision; it would be limited to routine unskilled work with only occasional new learning; that new learning would need to be either visually or verbally provided, rather than in a written format; there should be no requirement for constant focus, as would be required for instance in conveyor belt assembly type work; nor should there be a requirement for any more than occasional judgment or decision-making.

AR 18. In assessing Plaintiff's RFC, the ALJ noted that no acceptable medical source placed any physical or mental limitations on Plaintiff. AR 21.

The ALJ found step four to be irrelevant because Plaintiff had no past relevant work. At step five, the ALJ relied on post-hearing written exchanges with a vocational expert ("VE") to identify jobs in the national economy that Plaintiff could perform. AR 22. Thus, the ALJ concluded that Plaintiff is not disabled. AR 23.

## DISCUSSION

Plaintiff alleges the following errors: (A) the Appeals Council failed to apply Social Security Ruling ("SSR") 13-2p; (B) the ALJ erred in finding that Plaintiff's drug addiction or alcoholism ("DAA") was a contributing factor material to his disability and in failing to find Plaintiff impaired under Listing 12.04(C)(3); (C) the ALJ improperly rejected the testimony of

social worker Al Falcon; and (D) the ALJ abused his discretion when he failed to provide Plaintiff's interrogatories to the VE. The Court addresses these arguments below.

## A.  The Appeals Council's Denial of Review

Plaintiff asserts that the Appeals Council erred in denying review because it should have applied SSR 13-2p, which became effective March 22, 2013. *See* SSR 13-2p, *available at* 2013 WL 621536, at *1 (February 20, 2013). SSRs do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

SSR 13-2p provides that adjudicators are not permitted "to rely exclusively on medical expertise and the nature of a claimant's mental disorder." SSR 13-2p, at *9. SSR 13-2p became effective after the ALJ's decision and before the Appeals Council's decision. Whatever import SSR 13-2p may have had on the Appeals Council's denial of review of Plaintiff's case cannot be reviewed by this Court. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (stating that federal courts do not have jurisdiction to review the Appeals Council's denial of review of an ALJ's decision because it is not a final agency action). Additionally, because it became effective after the ALJ's decision, SSR 13-2p does not provide a ground for appealing the ALJ's decision to this Court. *See, e.g.*, *Fulghum v. Colvin*, 2014 WL 3866673, at *7 n.9 (N.D. Cal. August 5, 2014).

## B.  Whether Plaintiff's DAA is a contributing factor material to his alleged disability

Plaintiff argues that the ALJ erred in finding that Plaintiff's DAA was material to Plaintiff's disability and that Plaintiff's mental disorders were not disabling conditions in the absence of Plaintiff's DAA. If DAA is a contributing factor material to the determination of disability, a claimant cannot be considered disabled for purposes of awarding benefits. 42 U.S.C.

§ 1382c(a)(3)(J). Therefore, where relevant, an ALJ must conduct a DAA analysis and determine whether a claimant's disabling limitations remain in the absence of drug and alcohol use. 20 C.F.R. § 404.1535. If the ALJ finds a claimant to be disabled with the limitations caused by DAA, the ALJ then conducts a disability analysis a second time to determine whether substance abuse is material to disability. *Bustamante*, 262 F.3d at 955. If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to disability. 20 C.F.R. § 416.935(b)(2)(ii). If the remaining limitations would not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. 20 C.F.R. § 416.935(b)(2)(i); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). A claimant bears the burden of proving that DAA is not a contributing factor material to his or her disability. *Parra*, 481 F.3d at 748. There does not, however, "have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability." SSR 13–2p, at *4.

Here, the ALJ found that Plaintiff's impairments including DAA met Social Security Listing of Impairments 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders) of Appendix 1. The ALJ then considered Plaintiff's limitations without substance use. Although the ALJ found that Plaintiff's impairments would still be severe in the absence of substance use, the ALJ found that Plaintiff's impairments did not satisfy the criteria to meet an impairment listed in Appendix 1. No party asserts that the ALJ incorrectly identified June 27, 2011, as the date when Plaintiff's substance use ceased. Accordingly, the Court will analyze Plaintiff's functioning after that date in considering whether the ALJ erred in finding Plaintiff's DAA material.

Plaintiff argues that without substance abuse his impairments still meet Listing 12.04(C)(3),[2] which requires a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support" and a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." Plaintiff argues that the ALJ erred in finding otherwise in light of the record as a whole, which includes evidence that was before the ALJ and new evidence submitted to and accepted by the Appeals Council.[3]

The ALJ accepted that Plaintiff has a medically documented history of a chronic affective disorder, as required by Listing 12.04(C)(3). The ALJ found, however, that Plaintiff has not demonstrated an inability to function outside of a highly supportive living arrangement, noting Plaintiff's ability to care for his infant niece, perform chores, and attend off-site meetings. A

---

[2] Plaintiff also states generally that the ALJ failed to demonstrate that Plaintiff's limitations from his substance abuse can be distinguished from his mental impairments and why Plaintiff's current functioning without substance use is any different from when the ALJ found that Plaintiff met Listing 12.04 and 12.06. Plaintiff, however, offers no argument explaining how, without substance abuse, he meets Listing 12.06 and points to no evidence in the record. Plaintiff's arguments and evidence are focused on his assertion of error relating to Listing 12.04. A claimant on appeal must do more than draw a court's attention to an ALJ's alleged omission. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Instead, the claimant must "offer[ a] theory, plausible or otherwise, as to how his [or her] disorder[s] . . . combine[ ] to equal a listed impairment." *Id.* Plaintiff fails to do so with respect to Listing 12.06.

[3] When the Appeals Council considered Plaintiff's new evidence, the new evidence became part of the record. 42 U.S.C. § 405(g); *Brewes*, 682 F.3d at 1163 ("[W]e hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."). Because this evidence is part of the record on which the ALJ's decision became final, the Court will consider the new evidence as it assesses whether the Commissioner's decision is supported by substantial evidence.

necessary inquiry, however, is the extent to which Plaintiff's *functioning outside* of a supportive living arrangement was made possible by his *residing inside* one. *See Esselstrom v. Chater*, 67 F.3d 869, 873 (9th Cir. 1995) (finding that claimant could "function outside of the support group with which he lived . . . only precisely *because* he lived with a support group") (emphasis in original). This inquiry is particularly relevant in light of the new evidence in the record.

The record contains evidence of alternating periods of success and failure in Plaintiff's functioning ability while he lived both inside and outside of supportive living arrangements and in the absence of substance use. Evidence before the ALJ included Plaintiff's testimony as well as case manager testimony and notes. Evidence first submitted to the Appeals Council includes treatment notes from Dr. Mark Nicholson dated February through August 2012, case manager notes dated December 2011 through September 2012, and a letter from social worker Al Falcon dated November 2012.[4]

Dr. Nicholson, a treating psychiatrist, indicated that Plaintiff "attends groups here at The Mental Health Center but is way too anxious to attend AA meeting" and that Plaintiff "is not able to leave his home [to] go to the grocery store or even to a restaurant." AR 900. When Plaintiff attended groups, he would only speak when asked a question and avoided eye contact with others. AR 871, 875. Before entering a supportive living arrangement, Plaintiff missed several consecutive group meetings and avoided contact with his case manager. AR 872-75.

---

[4] The Court notes that the letter from Al Falcon dated November 12, 2012, refers both to Plaintiff's functioning before and after the ALJ's decision on September 12, 2012. When new evidence is considered by the Appeals Council, the evidence is part of the record "so long as the evidence relates to the period on or before the ALJ's decision." *Brewes*, 682 F.3d at 1162 (citing 20 C.F.R. § 404.970(b)). Accordingly, to the extent that the Court addresses evidence from Mr. Falcon, it will only consider the portion of Mr. Falcon's letter that pertains to Plaintiff's functioning prior to September 12, 2012, the date of the ALJ's decision.

During Plaintiff's brief attempt at living in his own apartment, Plaintiff went grocery shopping alone and applied for jobs with the assistance of his case manager. AR 918. But Plaintiff was also hospitalized for one night because of a panic attack and spent time in jail. AR 903, 920. Plaintiff stopped living alone after he was evicted from his apartment because of noise complaints and kicked out of a shelter and care program because of violations with his landlord. AR 922. Plaintiff then returned to live with his parents. AR 923. The record also indicates that while previously living with his parents, Plaintiff provided care for an infant niece but also isolated in his room, including during family meals. AR 47, 871.

Additional evidence suggests that Plaintiff further experienced fluctuations in his functioning ability. Dr. Nicholson noted that, when using a new medication, "[Plaintiff] had great relief from agoraphobia and he's had great relief from his panic attacks. He's working for a temp agency and getting good work with them. He's very pleased with how things are going."[5] AR 905. Case manager notes from two weeks later, however, indicate that Plaintiff took three extra pills one day and drank hand sanitizer and took four extra pills another day. AR 925. The concluding treatment note in the record indicates that Plaintiff was living with his mother and "working and staying busy." AR 926. Finally, Mr. Falcon, who served as a social worker for Plaintiff for approximately two years, observed that Plaintiff has demonstrated an "inability to maintain a level of function suitable to support long term independent living when on his own." AR 906.

The record is not clear about the specific levels of support provided by Plaintiff's living situations for much of the December 2011 through September 2012 time period. It does,

---

[5] The Court notes that Plaintiff's work attempts do not suffice to negate a finding of disability. *See* 20 C.F.R. § 404.1592; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1039-40 (9th Cir. 2007) (finding that an attempt to work over a nine-week period does not mean that a person can engage in substantial gainful employment).

however, reflect significant fluctuations in Plaintiff's ability to function and his failed attempt at

living alone. Accordingly, when viewing the record as whole, including the new evidence

submitted to the Appeals Council, the ALJ's conclusion that Plaintiff does not have an inability

to function outside of a highly supportive living arrangement for more than one year is not

supported by substantial evidence.

## C.  The ALJ's Treatment of Al Falcon's Testimony

Plaintiff alleges that the ALJ improperly rejected the testimony of social worker

Al Falcon. Mr. Falcon's testimony is relevant as a lay witness under 20 C.F.R. § 404.1513(d),

but such testimony may be discounted if the ALJ provides "reasons that are germane to each

witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ noted Mr. Falcon's

assessments of Plaintiff's social isolation and anxiety as well as his observations of Plaintiff's

difficulties with attention and concentration. The ALJ then cited evidence that contradicted these

assessments and observations, including that Plaintiff watched television in a common room, got

along with others, went about in the community, and read and understood newspaper articles.

The ALJ also noted that medical sources contradicted Mr. Falcon's assessment and that the

difficulties Mr. Falcon cited were incorporated in Plaintiff's RFC. Although evidence of

Plaintiff's functioning may provide germane reasons to discount Mr. Falcon's testimony, the

effect of Plaintiff's living arrangement on his functioning must first be accounted for, as must the

new evidence from Dr. Nicholson. Thus, upon remand the ALJ shall consider whether germane

reasons remain to discount Mr. Falcon's testimony.

## D.  Plaintiff's Vocational Expert Interrogatories

Because the Court finds that the ALJ's decision as to whether Plaintiff meets

Listing 12.04(C)(3) is not supported by substantial evidence and remands for further

PAGE 13 – OPINION AND ORDER

proceedings, the Court does not address the errors that Plaintiff alleges regarding the VE interrogatories.

## CONCLUSION

The Commissioner's decision that Mr. Hall is not disabled is REVERSED and REMANDED for further proceedings. On remand, the ALJ shall consider whether Mr. Hall meets Listing 12.04(C) in the absence of substance use.

**IT IS SO ORDERED**.

DATED this 2nd day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge